CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**,<br><br>Plaintiff,<br><br>v.<br><br>**Saif Ali Ahmed Saleh; Michael's Market, Inc.,** a California Corporation; and Does 1-10,<br><br>Defendants. | **Case No**.<br><br><br>**Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act. |

Plaintiff Scott Johnson complains of Saif Ali Ahmed Saleh; Michael's Market, Inc.; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2. In April 2014, Defendant Saif Ali Ahmed Saleh was the real property

Complaint

owner of the building/parcel located at or about 3120 E. Main St., Stockton, California.

3.   In August 2014, Defendant Saif Ali Ahmed Saleh was the real property owner of the building/parcel located at or about 3120 E. Main St., Stockton, California.

4.   In September 2014, Defendant Saif Ali Ahmed Saleh was the real property owner of the building/parcel located at or about 3120 E. Main St., Stockton, California.

5.   Currently, Defendant Saif Ali Ahmed Saleh is the real property owner of the building/parcel located at or about 3120 E. Main St., Stockton, California.

6.   In April 2014, Defendant Michael's Market was the business owner of Michael's Market, located at or about 3120 E. Main St., Stockton, California ("Michael's Market").

7.   In August 2014, Defendant Michael's Market was the business owner of Michael's Market.

8.   In September 2014, Defendant Michael's Market was the business owner of Michael's Market.

9.   Currently, Defendant Michael's Market is the business owner of Michael's Market.

10. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10,

2

Complaint

inclusive, are ascertained.

**JURISDICTION & VENUE:**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

12. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

13. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

14. Michael's Market is a facility open to the public, a place of public accommodation, and a business establishment.

15. Parking is one of the facilities, privileges and advantages offered by Defendants to patrons of Michael's Market.

16. And although Michael's Market had two parking spaces marked and reserved for persons with disabilities in April 2014, Defendants failed to maintain the disabled parking spaces in compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

17. In April 2014, the parking spaces marked and reserved for persons with disabilities did not have adjacent access aisles.

18. In April 2014, the parking spaces marked and reserved for persons with disabilities did not have the required pole or wall mounted signage displaying the wheelchair logo.

Complaint

19. In April 2014, the parking spaces marked and reserved for persons with disabilities did not have the required "Minimum Fine $250" signage.

20. In April 2014, the parking spaces marked and reserved for persons with disabilities did not have the required tow-away signage.

21. In April 2014, there were no van accessible parking spaces.

22. Michael's Market had two parking spaces marked and reserved for persons with disabilities in August 2014, but Defendants failed to maintain the disabled parking spaces in compliance with the ADAAG.

23. In August 2014, the parking spaces marked and reserved for persons with disabilities did not have adjacent access aisles.

24. In August 2014, the parking spaces marked and reserved for persons with disabilities did not have the required pole or wall mounted signage displaying the wheelchair logo.

25. In August 2014, the parking spaces marked and reserved for persons with disabilities did not have the required "Minimum Fine $250" signage.

26. In August 2014, the parking spaces marked and reserved for persons with disabilities did not have the required tow-away signage.

27. In August 2014, there were no van accessible parking spaces.

28. Michael's Market had two parking spaces marked and reserved for persons with disabilities in September 2014, but Defendants failed to maintain the disabled parking spaces in compliance with the ADAAG.

29. In September 2014, the parking spaces marked and reserved for persons with disabilities did not have adjacent access aisles.

30. In September 2014, the parking spaces marked and reserved for persons with disabilities did not have the required pole or wall mounted signage displaying the wheelchair logo.

31. In September 2014, the parking spaces marked and reserved for persons with disabilities did not have the required "Minimum Fine $250"

4

Complaint

signage.

32. In September 2014, the parking spaces marked and reserved for persons with disabilities did not have the required tow-away signage.

33. In September 2014, there were no van accessible parking spaces.

34. Michael's Market currently has two parking spaces marked and reserved for persons with disabilities currently, but Defendants fail to maintain the disabled parking spaces in compliance with the ADAAG.

35. Currently, the parking spaces marked and reserved for persons with disabilities do not have adjacent access aisles.

36. Currently, the parking spaces marked and reserved for persons with disabilities do not have the required pole or wall mounted signage displaying the wheelchair logo.

37. Currently, the parking spaces marked and reserved for persons with disabilities do not have the required "Minimum Fine $250" signage.

38. Currently, the parking spaces marked and reserved for persons with disabilities do not have the required tow-away signage.

39. Currently, there are no van accessible parking spaces.

40. Paths of travel are another one of the facilities, privileges and advantages offered by Defendants to patrons of Michael's Market.

41. In April 2014, the entrance door hardware was a horizontal grab bar which required tight grasping and twisting of the wrist to operate.

42. In April 2014, although there were shelves and merchandise aisles open to customers for shopping, the path of travel in and throughout these merchandise aisles was not accessible to wheelchair users because the defendants had a practice of placing merchandise and merchandise displays along the route of travel.

43. Thus, in April 2014, the path of travel in and throughout the merchandise aisles was restricted to less than 36 inches in width.

Complaint

44. In August 2014, the entrance door hardware was a horizontal grab bar which required tight grasping and twisting of the wrist to operate.

45. In August 2014, although there were shelves and merchandise aisles open to customers for shopping, the path of travel in and throughout these merchandise aisles was not accessible to wheelchair users because the defendants had a practice of placing merchandise and merchandise displays along the route of travel.

46. Thus, in August 2014, the path of travel in and throughout the merchandise aisles was restricted to less than 36 inches in width.

47. In September 2014, the entrance door hardware was a horizontal grab bar which required tight grasping and twisting of the wrist to operate.

48. In September 2014, although there were shelves and merchandise aisles open to customers for shopping, the path of travel in and throughout these merchandise aisles was not accessible to wheelchair users because the defendants had a practice of placing merchandise and merchandise displays along the route of travel.

49. Thus, in September 2014, the path of travel in and throughout the merchandise aisles was restricted to less than 36 inches in width.

50. Currently, the entrance door hardware is a horizontal grab bar which required tight grasping and twisting of the wrist to operate.

51. Currently, although there are shelves and merchandise aisles open to customers for shopping, the path of travel in and throughout these merchandise aisles is not accessible to wheelchair users because the defendants have a practice of placing merchandise and merchandise displays along the route of travel.

52. Thus, currently, the path of travel in and throughout the merchandise aisles is restricted to less than 36 inches in width.

53. Transaction counters are another one of the facilities, privileges and

6

Complaint

advantages offered by Defendants to patrons of Michael's Market.

54. Although there was a lowered transaction counter at Michael's Market in April 2014, it was not accessible to wheelchair users because Defendants crowded it with merchandise.

55. Although there was a lowered transaction counter at Michael's Market in August 2014, it was not accessible to wheelchair users because Defendants crowded it with merchandise.

56. Although there was a lowered transaction counter at Michael's Market in September 2014, it was not accessible to wheelchair users because Defendants crowded it with merchandise.

57. Although there is currently a lowered transaction counter at Michael's Market, it is not accessible to wheelchair users because Defendants crowd it with merchandise.

58. Plaintiff visited Michael's Market in April 2014.

59. Plaintiff visited Michael's Market in August 2014.

60. Plaintiff visited Michael's Market in September 2014.

61. The plaintiff personally encountered these violations and they denied him full and equal access.

62. These barriers caused Plaintiff great difficulty and frustration.

63. Restrooms are another one of the facilities, privileges and advantages offered by Defendants to patrons of Michael's Market.

64. And although he did not personally confront the following barriers, Plaintiff alleges that the restroom at Michael's Market is not accessible to persons with disabilities.

65. Plaintiff alleges that the restroom door hardware is a traditional twisty knob that requires tight grasping, pinching, and twisting of the wrist to operate.

66. Plaintiff alleges that the restroom door clear passage width is less than 32 inches.

Complaint

67.   Plaintiff alleges that the restroom does not provide a minimum 60 inch turning radius.

68. Plaintiff alleges that the restroom does not have grab bars adjacent to the toilet.

69. Plaintiff alleges that the restroom sink faucet hardware is two twisty knobs that require tight grasping or twisting of the wrist to operate.

70. Plaintiff alleges that the restroom sink is mounted such that the rim is more than 34 inches above the finish floor.

71. Plaintiff alleges that the plumbing underneath the sink is not wrapped to protect against burning contact.

72. Plaintiff alleges that the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the floor and is not effectively used by wheelchair users.

73. Plaintiff would like to return and patronize Michael's Market but will be deterred from visiting until the defendants cure the violations.

74. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

75. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

8

Complaint

76. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

77. Plaintiff is and has been deterred from returning and patronizing Michael's Market because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the market to assess ongoing compliance with the ADA and will return to patronize Michael's Market as a customer once the barriers are removed.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42  U.S.C. section 12101, et seq.)

78. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

79. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

        a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are

Complaint

necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

80. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. Each accessible parking stall must have an access aisle adjacent to it. Standard accessible parking stalls can have a 60 inch wide access aisle while van accessible stalls must have a 96 inch wide access aisle. 1991 Standards § 4.1.2(5)(a)&(b) and 2010 Standards § 502.2.

81. Here, the failure to have an access aisle is a violation of the ADA.

82. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of

Complaint

marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2. The access aisle must extend the full length of the parking spaces it serves. 2010 Standards § 502.3.2.  Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (   ) in white on a blue background. *Id.* It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. *Id.* Signs must be posted so that they cannot be obscured by a vehicle parking in the space. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id.* Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id.* Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (   ) that is 36 inches by 36 inches. *Id.* And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. *Id.*

11

Complaint

83. Here, the failure to reserve the accessible parking spaces for persons with disabilities with a reflectorized sign is a violation of the ADA.

84. Here, the failure to post the required fine signage is a violation of the ADA.

85. Here, the failure to post the required tow-away signage is a violation of the ADA.

86. One in every eight accessible parking spaces, but not less than one, must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

87. Here, the lack of a van parking space is a violation of the ADA.

88. Under the ADA, there must be an accessible route of travel from the boundary of the site, i.e., from the public street and public sidewalks at the "site arrival points" to the building entrances on the site. 1991 Standards (1991 Standards) § 4.1.2(1); 2010 Standards (ADAAS) § 206.2.1.

89. Door hardware must have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.13.9; 2010 Standards § 404.2.7.

90. Here the failure to provide such door hardware at the entrance is a violation of the ADA.

91. Here, the failure to provide such door hardware at the restroom is a violation of the ADA.

92. Shelves and display units allowing self-service by customers at stores must be located on an accessible route. 1991 Standards § 4.1.3(12)(b). An accessible route must be at least 36 inches in width. 1991 Standards § 4.3.3.

Complaint

93. Here, the failure to provide accessible paths of travel in and throughout the merchandise aisles is a violation of the ADA.

94. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

95. Here, the transaction counter was crowded with merchandise, rendering it inaccessible, in violation of the ADA.

96. All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

97. Here, the failure to provide the 32 inch wide restroom doorway opening is a violation of the ADA.

98. In order for a bathroom to be considered accessible, it must provide unobstructed 60 inches in diameter of turning space. 1991 Standards § 4.23.3; 4.2.3; 2010 Standards § 603.2.1; 304.3.1.

99. Here, there is no such turning radius and the restroom is not accessible, in violation of the ADA.

100.     Toilet stalls can conform to the "standard" stall arrangement or an alternate stall arrangement but in either case, there needs to be two grab

Complaint

bars mounted on adjacent or parallel walls next to the toilet for use by persons with disabilities. 1991 Standards § 4.17.6.

101.   Here the failure to provide such grab bars is a violation of the ADA.

102.   Sink hardware must have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.24.7 and 4.27.4.

103.   Here the failure to provide such sink hardware is a violation of the ADA.

104.   Sinks must be mounted so that the counter or rim is no higher than 34 inches above the finish floor. 1991 Standards § 4.24.2; 2010 Standards § 606.3.

105.   Here, the failure to provide a restroom sink of accessible height is a violation of the ADA.

106.   Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

107.   Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

108.   Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

109.   Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

110.   A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be

Complaint

readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

111.     Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the ADA.

112.     Given its location and options, Michael's Market is a location that the plaintiff will continue to desire to patronize but he has been and will continue to be discriminated against due to the lack of accessible facilities.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

113.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

114.     Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

115.     Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort, or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, *i.e.,* a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

116.     Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

15

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: March 21, 2016                CENTER FOR DISABILITY ACCESS

By: _____
Mark Potter, Esq.
Attorneys for Plaintiff

Complaint